UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Phillip Roberts</u>

    v.                                                             Case No. 20-cv-618-SE

<u>Warden, FCI Berlin</u>

### REPORT AND RECOMMENDATION

The Warden of the Federal Correctional Institution in Berlin, New Hampshire ("FCI Berlin") moves to dismiss, <u>see</u> Resp't's Mot. to Dismiss (Doc. No. 14), Phillip Roberts's 28 U.S.C. § 2241 petition for a writ of habeas corpus (Doc. Nos. 1, 5)[1] on the grounds that it fails to state a claim for relief. Mr. Roberts, who is incarcerated at FCI Berlin and is proceeding pro se, objects. <u>See</u> Pet'r's Resp. to Warden's Mot. to Dismiss (hereinafter "Resp. to Mot. to Dismiss") (Doc. No. 15). In his petition, Mr. Roberts challenges a Bureau of Prison ("BOP") disciplinary proceeding and the penalties imposed against him for committing an infraction under the BOP Prohibited Acts Code

---

[1] Mr. Roberts initially requested relief under Federal Rule of Civil Procedure 60(b). <u>See</u> Doc. No. 1. He filed a motion asking the court to construe his filing as a petition for a writ of habeas corpus under 28 U.S.C. § 2241. Doc. No. 3. The court granted that motion and directed the case to proceed accordingly for all purposes. Mr. Roberts filed his completed § 2241 petition, Doc. No. 5, attaching his original petition and accompanying documents to that filling, Doc. No. 5-1. The court considers Doc. No. 5, including the attachments thereto, to be the operative § 2241 petition in this case.

("Code"), 28 C.F.R. § 541.3 tbl.1.  As discussed herein, the district judge should grant the Warden's motion, as the BOP proceedings and sanction did not violate Mr. Roberts's due process rights.

## I.  Motion to Dismiss Standard

To defeat a Rule 12(b)(6) motion to dismiss, "the facts alleged in the complaint, taken as true by the court, which also draws all inferences in the pleader's favor, 'must state a plausible, not merely conceivable, case for relief.'" Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth., 4 F.4th 63, 69 (1st Cir. 2021) (quoting Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010)).  The court must, however, "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements."  Lyman v. Baker, 954 F.3d 351, 360 (1st. Cir 2020) (quoting Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012)).

In ruling on a Rule 12(b)(6) motion, the court's assessment of plausibility "is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Cebollero-Bertran, 4 F.4th at 70 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)); accord Lyman, 954 F.3d at 360.  The court "may also consider 'facts subject to judicial notice,

implications from documents incorporated into the complaint, and concessions in the complainant's response to the motion to dismiss.'" Breiding v. Eversource Energy, 939 F.3d 47, 49 (1st Cir. 2019) (quoting Arturet-Vélez, R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n.2 (1st Cir. 2005)).  The court liberally construes the pleadings of a pro se petitioner. Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 75–76 (1st Cir. 2014) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam)).

**II.  Background**

Mr. Roberts challenges a discipline hearing officer ("DHO") decision finding him guilty of violating Code 299 in a manner most like Code 224 while incarcerated at FCI Berlin.  See Pet. for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (hereinafter "Pet.") (Doc. No. 5 at 2 ¶ 6); Pet'r's Fed. R. Civ. P. 60(b) Mot., Pet. Attachs. (hereinafter "Pet. Attachs.") (Doc. No. 5-1 at 2).  Code 299 prohibits:

> Conduct which disrupts or interferes with the security or orderly running of the institution or the [BOP] most like another High severity prohibited act.  This charge is to be used only when another charge of High severity is not accurate.  The offending conduct must be charged as "most like" one of the listed High severity prohibited acts.

28 C.F.R. § 541.3 tbl.1.  Code 224 forbids "[a]ssaulting any person (a charge at this level is used when less serious

3

physical injury or contact has been attempted or accomplished by an inmate)." Id.

The disciplinary charges at issue stem from a May 17, 2019 incident involving Mr. Roberts and two other prisoners, Terry Scott and Steven Bugni. Incident Report, Pet. Attachs. (Doc. No. 5-1 at 17 ¶ 11). According to the Incident Report, Mr. Bugni "assaulted" Mr. Scott "in Gym A of the Inside Recreation Department," and Mr. Roberts "was present and observed this assault . . . ." Id. According to an internal BOP Special Investigative Supervisor ("SIS") investigation, Mr. Roberts, as "the local leader of the Black Disciples street gang, . . . instructed . . . Bugni (also a Black Disciple) to perform this assault." Id. The SIS investigation also determined that, prior to Mr. Bugni assaulting Mr. Scott, Mr. Roberts had "exchanged emails with" another individual, identified as "John Rucker," "who told . . . Roberts[,] 'Be careful with dude (Scott) he working with the feds don't tell none of your business (sic).'" Id.

The Incident Report, dated June 6, 2019, describes what transpired on May 17, 2019 and includes the findings of the SIS investigation conducted between May 17, 2019 and June 6, 2019, when the SIS Office became "aware of the closure of [the] investigation" at 9:00 a.m. Id. BOP staff signed the Incident

4

Report ten minutes later at 9:10 a.m., id., and Mr. Roberts received a copy at 12:01 p.m., id. at ¶ 16.

Prior to the commencement of the DHO hearing, a BOP staff member advised Mr. Roberts of his rights on June 10, 2019. See DHO Report, Pet. Attachs. (Doc. No. 5-1 at 18 ¶ I(C)). Mr. Roberts waived his right to staff representation and did not request to call any witnesses at the hearing. Id. at ¶¶ II(A), III(C)(1). Eleven days later, on June 21, 2019, the DHO conducted a hearing on the Code 299 most like 224 offense charge levied against Mr. Roberts. Id. at ¶ I(B). The DHO summarized the charges: "Conduct Which Disrupts or Interferes with the Security or Orderly Running of the Institution Most Like Assaulting Any Person." Id. at 18 ("Summary of charges").

Mr. Roberts denied the charges against him. Id. at ¶ III(A). He offered the following statement:

> First things first, when I turned (sic) 35, I'm retiring from this. Kelley[2] interviewed me. I said if you're S.I.S. you know where we sit and I'm not on gang time. I've been staying out of trouble, over three years. I have no authority.

Id. at ¶ III(B). The DHO asked Mr. Roberts why Mr. Bugni assaulted Mr. Scott after Mr. Roberts emailed Mr. Rucker about Mr. Scott, id., and ascertained that Mr. Scott was cooperating with the federal government, Incident Report at 17 ¶ 11. Mr.

---

[2] Neither the Incident Report nor the DHO Report identifies Kelley's official role.

5

Roberts replied, "I don't know. [Mr. Bugni] could get this info on his own." DHO Report at ¶ III(B). The DHO then asked Mr. Roberts, "Why were you conversing with Bugni and then go with him to stand by while Bugni assaulted Scott?" Id. Mr. Roberts said, "I went there to see that the dude" — understood by the DHO as Mr. Bugni — "didn't hurt [Mr. Scott]." Id.

In addition to taking Mr. Roberts's statement at the hearing, the DHO, in reaching its decision,

> considered the following documents: Inmate Investigative Report, Memorandum from G. Koppel, SIS Technician, TRULINCS Email from inmate Robert's account, Inmate Names Roster, Clinical Encounter and Imaging Interpretation of inmate Scott . . ., Video Footage and Still Photos of video footage and written statement submitted by inmate Roberts.

Id. at ¶ III(D). The DHO also relied on the Incident Report. Id. Where the DHO Report allows the DHO to record its consideration of confidential information not revealed to the prisoner, the DHO wrote "N/A." Id. at ¶ III(E).

After the hearing, the DHO found Mr. Roberts committed the offense charged "based on the greater weight of evidence, that being the written account of the incident and evidence provided." Id. at 21 ¶ V. The DHO then imposed the following penalty: disallowance of twenty-seven days of good time credit, disciplinary segregation for twenty-eight days suspended pending 180 days clear conduct, and loss of commissary privileges for six months. Id. at ¶ VI. Mr. Roberts received a copy of the

6

DHO Report seven days after the hearing, on June 28, 2019. Id. at ¶ IX. Subsequently, Mr. Roberts filed administrative appeals challenging the DHO's decision and resulting sanctions; his appeals were unsuccessful. See Pet. at 2 ¶ 7(a), 3 ¶ 8(a); see also BP-11 Filing, Pet. Attachs. (Doc. No. 5-1 at 26); Admin. Remedy No. 984558-A1, Part B – Response (Oct. 31, 2019), Pet. Attachs. (Doc. No. 5-1 at 16) (denying central appeal).

**III. Discussion**

**A.   Legal Standard**

Mr. Roberts contends that the DHO's disciplinary proceedings against him, resulting in the revocation of good time credit, violated his Fifth Amendment due process rights on two grounds. See Pet. at 6 ¶ 13; Pet. Attachs. at 3, 9. He argues that the BOP failed to notify him in a timely fashion of the charges against him, contrary to BOP regulation and policy (Ground Two), see Pet. at ¶ 6; Pet. Attachs. at 3-8, and the DHO lacked enough reliable evidence to find him guilty of violating Code section 299 most like 224 (Ground One), Pet. at ¶ 6; see also Pet. Attachs. at 9-14.

"[D]ue process requires procedural protections before a prison inmate can be deprived of a protected liberty interest in good time credits." Superintendent v. Hill, 472 U.S. 445, 453 (1985) (citing Wolff v. McDonnell, 418 U.S. 539 (1974)). For a

7

BOP disciplinary hearing, these due process procedural protections include "written notice of the charges at least twenty-four hours in advance of the hearing," Surprenant v. Rivas, 424 F.3d 5, 16 (1st Cir. 2005) (citing Wolff, 418 U.S. at 564), "the ability to call witnesses and present documentary evidence," id. (citing Wolff, 418 U.S. at 566), and "a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action," Hill, 472 U.S. at 454 (citing Wolff, 418 U.S. at 563-67).

After a hearing, when a DHO disallows good time credit as a penalty for a Code violation, due process requires the support of that decision by "some evidence in the record." Hill, 472 U.S. at 454. The DHO's decision satisfies this standard when "any evidence in the record" exists "that could support the conclusion reached . . . ." Id. at 455-56.

**B.   Mr. Robert's Claims**

   1.   <u>Timely Notice of the Charges</u>

In Mr. Roberts's view, the BOP failed to (1) provide him with a copy of the Incident Report within five business days of BOP staff becoming aware of Mr. Roberts's involvement in the incident at issue and (2) document the delay as discussed by BOP Program Statement 5270.09. Pet. Attachs. at 3-5. Specifically, Mr. Roberts argues that BOP staff falsely claimed in the Incident Report that they became aware of the incident involving

8

Mr. Roberts on June 6, 2019, whereas the DHO Report reflects — accurately – that staff were aware of the incident on May 17, 2019, the day of the assault on Mr. Scott. Id. at 4.[3]

The court "defer[s] to [an] agency's interpretations of regulations of its own creation unless the agency's position is 'plainly erroneous or inconsistent with the regulation.'" Castro-Soto v. Holder, 596 F.3d 68, 72 (1st Cir. 2010) (quoting Massachusetts v. United States, 522 F.3d 115, 127 (1st Cir. 2008)); accord City of Taunton v. U.S. Env't Prot. Agency, 895 F.3d 120, 126–27 (1st Cir. 2018) (quoting Auer v. Robbins, 519 U.S. 452, 461 (1997)). The relevant BOP regulation indicates that a prisoner "will ordinarily receive the incident report within 24 hours of staff becoming aware of [the prisoner's]

---

[3] The Warden, in his motion to dismiss, argues that Mr. Roberts failed to exhaust his administrative remedies on the timeliness issue before filing his petition for a writ of habeas corpus in this court. Resp't's Mot. to Dismiss at 1–2. Mr. Roberts asserts that he filed the appropriate administrative appeals, resulting in exhaustion of his claims, and if he did not raise the timeliness issue effectively in his administrative appeals, then the court should construe his administrative appeals liberally. Resp. to Mot. to Dismiss at 1–2. The court may deny a habeas petition on the merits, despite the petitioner's failure to exhaust his administrative remedies. See Martinez v. Davis, 393 F. App'x 570, 571 (10th Cir. 2010) ("[I]t is not inconsistent with § 2241 . . . to follow the policy of § 2254(b)(2) and deny the petition on the merits without considering exhaustion." (internal punctuation omitted) (quoting Montez v. McKinna, 208 F.3d 862, 866 (10th Cir. 2000))); see also Thompson v. Ricci, 326 F. App'x 116, 118 (3d Cir. 2009); cf. 28 U.S.C. § 2254(b)(2). Accordingly, the court declines to address the exhaustion issue here and instead rules on the merits of the claims in the petition.

involvement in the incident." 28 C.F.R. § 541.5(a). "Courts have consistently held," however, that this regulation, "by its terms is not mandatory, and, in any event, does not 'create an enforceable right.'" Cipriano v. Fed. Bureau of Prisons, C.A. No. 17-377-WES, 2017 WL 6942439, at *7; 2017 U.S. Dist. LEXIS 215112, at *21 (D.R.I. Dec. 6, 2017) (citations omitted), R&R approved, 2018 WL 400768, at *1; 2018 U.S. Dist. LEXIS 6013, at *1 (D.R.I. Jan. 12, 2018); see also Millhouse v. Warden Lewisburg USP, 785 F. App'x 931, 934 (3d Cir. 2019) ("[T]he [BOP] regulations do not mandate that timing, and neither does Wolff.").

Furthermore, unlike BOP regulations, "the BOP's Program Statements 'are merely internal agency guidelines and may be altered by the [BOP] at will.'" De La Cruz v. Grondolsky, No. 12-40015-RGS, 2012 WL 3059431, at *2; 2012 U.S. Dist. LEXIS 104487, at *5 (D. Mass. July 27, 2012) (citation omitted). "Interpretive rules do not have the force and effect of law and are not accorded that weight in the adjudicatory process." Id.; 2012 U.S. Dist. LEXIS 104487, at *5 (alterations omitted) (quoting Shalala v. Guernsey Mem'l Hosp., 514 U.S. 87, 99 (1995)). BOP Program Statement 5270.09 also elaborates on the subsection of the regulation, § 541.5(b)(1), that details the investigation that transpires after the incident report issues.

> The Investigating Officer provides a copy of the incident report to the inmate at the beginning of the investigation, unless there is good cause for later delivery, such as absence of the inmate from the institution or a medical condition that argues against delivery.  If the investigation is delayed, an employee may deliver the charge(s) to the inmate.  The reason for the delay must be documented in the discipline record.  The incident report should be delivered to the inmate within 24 hours of the time staff become aware of the inmate's alleged misconduct. . . .  (The five-day time frame for a [Unit Disciplinary Committee] review starts when the incident report is released for administrative processing.)

U.S. Dep't of Just., BOP Inmate Discipline Program, Program Statement 5270.09 at 18-19 (July 8, 2011), available at https://www.bop.gov/policy/progstat/5270_009.pdf (last viewed Mar. 16, 2022).  As an interpretive rule, however, this timeline "do[es] not have the force and effect of law" and, therefore, is "not accorded that weight in the adjudicatory process."  See De La Cruz, 2012 WL 3059431, at *2; 2012 U.S. Dist. LEXIS 104487, at *5 (granting motion to dismiss prisoner's claim against BOP alleging a violation of due process based on BOP's failure to follow Program Statement).  Accordingly, neither the BOP's regulation, § 541.5(a), nor its Program Statement 5270.09 provide Mr. Roberts with a due process right to have an Incident Report delivered to him within the timelines suggested by those rules.  See Wallace v. Fed. Detention Ctr., 528 F. App'x 160, 162–63 (3d Cir. 2013) (denying relief to a prisoner who argued that "his right to due process was infringed" when "prison

11

officials did not present him with charges within 24 hours of the conduct in violation of 28 C.F.R. § 541.5(a)" and instead "presented [him] with notice of the disciplinary charges against him two months after" the incident).

Due process only demands "written notice of the charges at least twenty-four hours in advance of the hearing," Surprenant, 424 F.3d at 16 (citing Wolff, 418 U.S. at 564); see Wallace, 528 F. App'x at 163.  Mr. Roberts received a copy of the Incident Report, which provides him with written notice of the disciplinary charges against him, on June 6, 2019.  Incident Report at 17 ¶ 16.  The hearing took place on June 21, 2019.  DHO Report at 18 ¶ I(B).  Mr. Roberts, therefore, received "written notice of the charges at least twenty-four hours in advance of the hearing," Surprenant, 424 F.3d at 16 (citing Wolff, 418 U.S. at 564), which provided Mr. Roberts the due process required by the Fifth Amendment.

    2.   Sufficiency of the Evidence

Mr. Roberts claims that the DHO violated his due process rights because the DHO lacked credible evidence that Mr. Roberts violated Code 299 most like 224.  Cf. Pet. at 5 ¶ 13.  Specifically, Mr. Roberts challenges the reliability of witness statements from individuals identified in the DHO Report only as Witness A and Witness B and argues that the DHO failed to

provide Mr. Roberts with a sufficient opportunity to confront those witnesses. See Pet. Attachs. at 9-14. Mr. Roberts also challenges the DHO's finding to the extent it was based on Mr. Roberts's written statement regarding the incident, as Mr. Roberts "denies writing" or ever seeing it. Pet. Attachs. at 12. These arguments also lack merit.

A DHO's decision that a prisoner committed a disciplinary offense must be supported by "some evidence in the record." Hill, 472 U.S. at 454. That standard is satisfied when "any evidence in the record" exists "that could support the conclusion reached" by the DHO. Id. at 455-56. A DHO may find that a prisoner has committed a charged disciplinary offense where there is no direct evidence of the prisoner's guilt. See id. at 457. Even "meager" evidence will suffice. See id. A court, in ascertaining whether the DHO has satisfied that standard, need not examine the entire record, independently assess the credibility of witnesses, or weigh the evidence. See Hill, 472 U.S. at 455.

First, Mr. Roberts's assertions that certain evidence before the DHO may have been fabricated are entirely speculative. Although the DHO Report refers to Mr. Roberts's written statement, Mr. Roberts did not reproduce or attach such a statement to the forms he submitted to the Court; the DHO's reference to this statement may have been in error. Cf. DHO

13

Report at 20-21 ¶ V (stating, "The DHO relied on [Mr. Robert's] written statement," followed by a colon and blank space, but not reproduced statement). Further, that two unidentified witnesses may have written statements does not necessarily mean the statements were fabricated or that they are unreliable. Regardless, the court accepts as true Mr. Roberts's allegations in his petition and its attachments when considering the motion to dismiss. See Cebollero-Bertran, 4 F.4th at 69.

Where, as here, the DHO considers information from confidential informants in finding the petitioner guilty of a disciplinary offense, if "there is other evidence supporting the disciplinary decision, due process is satisfied 'without determining the reliability of the confidential informant' or the institutional reasons for non-disclosure." Ned v. Tatum, No. 15-cv-178-LM, 2017 WL 3822736, at *5; 2017 U.S. Dist. LEXIS 139885, at *12 (D.N.H. May 16, 2017) (quoting Espinoza v. Peterson, 283 F.3d 949, 952 (8th Cir. 2002)). Accordingly, the court reviews the evidence in the DHO Report to determine whether "some evidence" supports the DHO's decision, excluding the statements of Witness A and Witness B and, similarly, the written statement attributed to Mr. Roberts. The remaining evidence is as follows:

- On May 13, 2019, Mr. Roberts emailed his cousin, Mr. Rucker, about Mr. Scott; on May 14, 2019, Mr. Rucker responded that Mr. Scott was working "with the feds,"

14

and to be careful and not tell Mr. Scott any of his
business.  DHO Report at 19, 20 ¶ V.

- Video footage of the May 17, 2019 incident showed:

    - Mr. Scott entering Gym A, followed by Mr. Bugni and Mr. Roberts two minutes later;

    - Mr. Roberts and Mr. Bugni then talking to each other "for approximately eight minutes" in Gym A;

    - Mr. Roberts and Mr. Bugni then walking toward Mr. Scott, Mr. Roberts standing behind Mr. Scott, and Mr. Bugni standing to Mr. Scott's right side;

    - Inmate Bugni assaulting Mr. Scott, to include: "punch[ing] inmate Scott several times and as inmate Scott was lying on the floor on his side, . . . forcefully stomp[ing] on inmate Scott's head thumping if (sic) off the floor";

    - Mr. Roberts "stand[ing] close the entire time and watch[ing] the assault"; and,

    - approximately one minute after the assault began, Mr. Roberts "lift[ing] both of his arms at his side and inmate Bugni end[ing] the assault and follow[ing] inmate Roberts out of the area." Id. at 20 ¶ V.

- Mr. Roberts stated at the hearing that he accompanied Mr. Bugni to the assault "to see that [Mr. Bugni] didn't hurt [Mr. Scott]," but the video shows Mr. Roberts offered no assistance to Mr. Scott during his assault. Id.

The DHO concluded that, "based on the greater weight of evidence," Mr. Roberts committed the offense charged, offering this reasoning:

> [Mr. Roberts] received negative information about a Terry Scott in lieu of (sic) asking an outside person (John Rucker) on 5/14/2018 about "Cheerio" which is the alias of inmate Scott.  [Mr. Roberts] admitted to this information during [his] S.I.S. investigation.  Due to

15

> [Mr. Roberts] being directly involved in requesting this information and being in close proximity of the assault and providing a false defense of claiming to being there to see that [Bugni] didn't hurt [Scott], [Mr. Roberts was] well aware of the assault that was about to occur. [Mr. Roberts is] being charged with disruptive conduct, most like assault due to [his] involvement.

Id. at 21 ¶ V. The DHO's stated basis for finding Mr. Roberts guilty of the disciplinary offense came entirely from actions visible on the video, Mr. Roberts's email exchange with Mr. Rucker, and Mr. Roberts's statements during the DHO hearing. Id. The DHO finding, therefore, was based on evidence that Mr. Roberts has not challenged, and the DHO could have reached this decision without considering the written statements of Witness A and Witness B or Mr. Roberts's purported written statement. Accordingly, the Court finds that the DHO's decision that Mr. Roberts committed the disciplinary offense charged is supported by "some evidence in the record." See Hill, 472 U.S. at 454; cf. Wallace, 528 F. App'x at 163 (holding that the DHO decision satisfied the "some evidence" standard when the DHO "relied on videotaped evidence of the fight and eyewitness testimony," despite the prisoner's assertion "that BOP officials falsified the incident reports"). The DHO based their decision on sufficient evidence, and so the decision and resulting sanction did not deprive Mr. Roberts of due process.

## IV. Conclusion

For the foregoing reasons, the district judge should grant the Warden's motion to dismiss (Doc. No. 14), direct that this case be closed, and direct that judgment be entered. Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2).

The fourteen-day period may be extended upon motion. Failure to file specific written objections to the Report and Recommendation within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016). "Only those issues fairy raised by the objections to" this Report and Recommendation "are subject to review in the district court and those not preserved by such objection are precluded on appeal." Id. (citations omitted).

_____
Andrea K. Johnstone
United States Magistrate Judge

March 23, 2022

cc: Phillip Roberts, pro se
    Seth R. Aframe, Esq.

17